## Neal v. Williams et al.

May 7, 1940.

Gilbert Burnett, Special Judge.

166

Robert E. Hogan for appellant.

Carroll, McElwain & Ballantine, Thomas A. Ballantine, Robert T. Burke, Jr., and Lawrence S. Poston for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

This case presents the question as to whether C. S. D. Neal was entitled to have his name certified to the Director of Welfare of the City of Louisville by the Director of the Louisville Personnel Commission as a person eligible for the position of Superintendent of the Municipal Bureau of Social Service. Neal passed the test for the position in question, and on April 8, 1939, he was sent the following notification by the Personnel Director:

> "You have passed the test for the position of Superintendent of the Municipal Relief Bureau. Your grade is 75.20, which entitles you to the rank of 6th on the eligible list. Your name will remain on the list for at least one year. As vacancies occur, when your name is reached, you will be notified to report for an interview with the appointing officials. Failure to do so or to advise us of all changes of your address will cause your name to be removed from the eligible list."

Neal's name was sixth on the eligible list of ten persons. The test for the position was given by the Commission under Section 2863-4 of the Statutes Supplement 1939.

Under Section 2863-1, a "competitive examination" is defined as follows:

"The term 'competitive examination,' as used in this act, shall include consideration and rating of any or all of the following qualifications of applicants; education, training, experience, general adaptability, special aptitude, physical fitness, knowledge, skill, personality, character and such other qualifications as may be deemed necessary for the satisfactory performance of the duties of the respective positions."

The same section defines an "eligible list" in these terms:

"The term 'eligible list,' as used in this act, shall be held to mean a list of names of persons who have been found qualified through suitable competitive examinations for positions or classes of positions as provided for in this act."

It can be seen from the definition of a competitive examination that the Personnel Commission has wide latitude in determining an applicant's fitness for a given position. The examination is not confined solely to a written test. Under the definition given, it would be within the power of the Commission, granting that it did not act arbitrarily, to reject all applicants for a given position without regard to the score made on the written part of the examination.

Section 2863-4 gives the Commission considerable latitude in the making of rules and regulations concerning the classification of positions, competitive examinations, selection of employees and promotions. The part of this section relating to competitive tests is as follows:

"For open competitive tests to ascertain the relative fitness of all applicants for appointment to said positions or employments in the said departments, agencies and commissions, and such tests shall be practicable and relate to matters which will fairly measure the relative fitness of candidates to discharge the duties of the positions to which they seek appointment. Notice of such tests shall be given not less than ten days in advance by public advertisement in at least one newspaper of general circulation in the city and by posting notices in the City Hall."

It can be seen from this quotation that it was the legislative intent that the Commission's examination be practical and relate to matters which would fairly measure the relative fitness of applicants to discharge the duties of a given position. The subsection of Section 2863-5, authorizing rules concerning eligible lists, reads in part as follows:

"Except in the case of emergency appointments as defined in Section 1 of this act, all appointments to positions subject to the provisions of this act shall be made by appointing authorities only from an eligible list certified by the personnel commissioner as qualified and eligible for appointment from an appropriate eligible list as defined in Section 1 of this act."

This subsection also provides for temporary appointments in the absence of an appropriate eligible list; but that question does not concern us here, because the appropriate eligible list for the position in question is the list of persons who passed the examination for the position.

Section 2863-5 of the Statutes provides that all appointments to positions covered by Section 2863-4 shall be made "solely on the basis of merit and fitness, to be determined by competitive examinations," except in the case of certain emergency and temporary appointments.

It can be seen from the foregoing provisions of the Statutes that no question can now be raised as to Neal's fitness for the position at the time he was notified on April 7th that he had passed the examination for it. If the Commission, through the administration of its competitive examination, had thought that Neal was not qualified for the position for which he took the examination, it could have failed him. In this connection the record does not show that Neal's conduct has been such since he was notified he had passed the test that he is now unsuited for the position, or that anything has happened since that time which would disqualify him for it.

The person whose name was second on the original list of ten was appointed to the position in question after the list of available persons was made up in April, 1939. He resigned, effective November 1, 1939. This automatically removed his name from the list. The Director of

Welfare then requested that the Personnel Director certify to him the names of three eligible male applicants. The Personnel Director refused to comply with this request. Following negotiations between the Director of Welfare and the Commission, the Welfare Director, on December 19, 1939, requested the Personnel Director to have the three top applicants who had been certified to him as eligible for appointment to the position report to him for an interview on January 9, 1940. It is significant that when the Personnel Director refused the request of the Director of Welfare to certify the names of male applicants, she said:

> "It is our opinion that, in order to be fair to all those who took the examination for this position and in the absence of some convincing reason for discriminating against a female for this position, we should certify the names in the order in which they stand on the eligible list."

Considerable water seems to have passed under the bridge by January 10, 1940, when the Personnel Director sent a letter to the Director of Welfare, two paragraphs of which are:

> "At its meeting held on Monday, January 8, the Personnel Commission unanimously decided to hold an examination for the position of Superintendent of the Municipal Bureau of Social Service. Five of the eight persons whose names appear on our eligible list have asked that their names be withdrawn. The Commission feels that, because of the importance of this position, a new examination should be held.

> "The rules of the Personnel Commission state that the Personnel Director, subject to the approval of the Commission, may combine any list less than one year old with a more recently prepared list."

While the letter just quoted says that there were only three names on the eligible list, the Personnel Director testified that on January 8th there were four names on this list. An effort was made to show that Neal was probably the only person who would have accepted the position had it been offered, however, we are concerned only with the fact that the names of four eligible persons were on the list for the position of Super-

intendent of the Municipal Bureau of Social Service at the time the Commission decided to hold a new examination. And, as indicated above, there is no question as to the eligibility of these four persons to fill the position. The Commission and the Commission only had the power to say who was and who was not eligible for the position. Nor are we concerned with why certain persons whose names were on the eligible list requested that their names be stricken therefrom, though we can not refrain from saying in passing that considerable activity must have been exercised by someone about the list and the job in question.

We turn now to two of the Rules which the Commission adopted under Section 2863-4 of the Statutes. Rule IX reads in part as follows:

"Original Appointments. When an appointing authority has decided to fill a vacancy by original appointment, the Director shall immediately certify to him the names of three persons standing highest on the employment list which the Director deems to be most nearly appropriate, if there be as many as three names thereon, or all of such names on the list if there are fewer than three. With the approval of the Director, the appointing authority may specify the sex or race of persons to be certified, in which event the Director shall certify the highest persons of the sex or race specified, in the same number as otherwise. * * *

"The Director shall notify in writing each person so certified and shall require each to acknowledge in writing to the Bureau of Personnel receipt of such notice. In the event of failure to receive such acknowledgment within five days after mailing of notice, or of the person certified to report for interview to the appointing authority within a reasonable time, the Director shall certify an additional name to the appointing authority. * * *"

As indicated above, there could be only one appropriate list for the position under consideration, namely, the list containing the names of those who passed the examination for the position. The first sentence of Rule IX provides that all of the names on the list shall be certified by the appointing authority in the event there are fewer than three names thereon. While it is of no

particular importance to the question before us, the second sentence of Rule IX clearly indicates that the request of the Director of Welfare that only the names of eligible male applicants be certified to him, was not without some foundation. Accepting Rule IX on its face, the Commission could have certified the name of only one person to the Director of Welfare had there remained only the one name on the eligible list at the time the Director of Welfare made his request. It would appear from the third sentence quoted from Rule IX that the Personnel Director should have certified additional names from the eligible list to the Director of Welfare when persons whose names were certified reported that they were not interested in the position.

There is some indication that the Personnel Director and the Personnel Commission were manifesting concern as to whom should be appointed to the position of Superintendent of the Municipal Bureau of Social Service, whereas the Statutes provide that their functions and duties ended, in so far as this case is concerned, when they examined applicants, and determined their eligibility for the position and furnished the appointing authority with the names of persons eligible for the position.

The next rule for consideration is Section 2 of Rule **VII.** It reads as follows:

> "The duration of each employment list shall begin with the date it is prepared and shall continue for one year thereafter, except that the Director, subject to the approval of the Commission, may combine any list less than one year old by substituting therefor a more recently prepared list, if he deems such action advisable."

The whole controversy before us hinges around the part of this rule following the word "except." It is the appellant's contention that this is an unreasonable and an arbitrary rule, and that it has been applied so as to discriminate against him. The appellees vigorously defend the rule, contending that it is reasonable in itself and that it has been applied in this instance in a reasonable and justifiable manner. While it smacks of unreasonableness, and obviously was designed with the view of giving the Commission great latitude in the administration of eligible lists, we are disposed to pass the ques-

tion of its unreasonableness and look to the manner in which the Commission and its Director have operated under it. It is our conclusion that the actions of the Commission and its Directors have clearly been arbitrary, capricious and discriminatory, in so far as Neal is concerned. As shown from the Personnel Director's letter to the Director of Welfare on January 10th, it was not until the day before the applicants were to appear before the Director of Welfare that the Commission decided that it needed a new list. This was long after the vacancy had occurred and long after there had been a call for a certification as to persons eligible for the position. As we have noted, there were four names on the eligible list when the Commission decided to hold another examination. Whether Neal is a suitable person to fill the position of Superintendent of the Municipal Bureau of Social Service is not for us to determine. The Personnel Commission examined him and found that he was eligible for the job. In doing this they acted within the scope of their authority. Of course, as contended by the appellees, every effort should be made to get competent persons for positions coming within the scope of the act before us; but one of the best ways to keep competent persons from applying for such positions and submitting themselves to examinations therefor would be to permit the Personnel authorities to act arbitrarily and to discriminate between persons whom they have found to be eligible for given positions. We are not saying that the Commission could not, under certain circumstances, give new examinations and revise lists which have been in existence for less than one year; but we do say, without reservation, that the conditions under which the new examination was given in this case were such as to brand them as being arbitrary, capricious and discriminatory. See People, etc., v. Knox et al., 31 Misc. 440, 65 N. Y. S. 635; People v. McBride, 104 Misc. 153, 172 N. Y. S. 11; Henry Hudson Parkway Authority v. Kern, 167 Misc. 699, 4 N. Y. S. (2d) 713.

Wherefore, the judgment is reversed with directions to set it aside and to enter a judgment granting the relief prayed for by Neal.

Whole Court sitting except Judge Rees.